The bill charges that a certain Nathaniel Williams was entitled to 256 acres of land, as an officer in the continental line. That on the 16th of May, 1785, he sold the same to a certain Grafton Ireland for a valuable consideration, and executed a transfer directing the grant to issue in the name of said Ireland. That on the 7th of March, 1786, a grant issued to said Williams, the transfer not having been filed in time to enable Ireland to obtain a grant in his own name. That after the issuance of said grant, which includes the lands now in dispute lying on Cumberland River in Smith county, the said Nathaniel, deceased, leaving William Williams and Nathaniel Williams, junior, his heirs-at-law. And that on the 18th day of December, 1802, the complainant purchased 1,024 acres of land from the said Grafton Ireland for a valuable consideration, and received a deed of conveyance therefor; and the bill further charges that William Williams after wards died and left the said Nathaniel sole heir-at-law of said estate. And that afterwards the defendant, Edward Harris and John Gray Blount, having notice through Jacob Blount their agent, and otherwise, of the previous sale of Nathaniel Williams, senior, to Grafton Ireland, procured a conveyance from Nathaniel Williams, junior, for said land, without consideration. And further, they procured a conveyance through Charles Smallwood, who acted as their agent, with the same notice and without consideration, and that Williams well knew of the sale from his ancestor to Ireland, and the defendants refuse to convey. The answers of the defendants, Blount and Harris, *Page 148 
deny notice either to themselves or Jacob Blount, and deny that Jacob Blount was their agent, and deny that Smallwood acted as their agent, and allege they gave a valuable consideration for said land. The answer of the defendant Smallwood denies notice of Ireland's purchase, insists that he is a purchaser for himself and gave a valuable consideration for said land, as will appear by the deed. The answer of Ireland admits the material facts of the bill. The exhibits show that a deed was made dated the 17th of November, 1796, by Nathaniel Williams, Junior, to Charles Smallwood for all his western lands without specifically describing any particular tract and without warranty; and on the 5th of March, 1799, a conveyance from said Williams to Blount and Harris for the land in dispute, with special warranty. And it also appears that a deed was made by Charles Smallwood to Blount and Harris on the 5th of September, 1805, for said lands. These are the material facts presented by the papers in this cause. In the examination of this cause two general propositions present themselves. First, if Nathaniel Williams the elder were now living and possessed of the legal title of this tract of land, could the complainant have a decree against him? Secondly, if he could have such decree, have any circumstances intervened since his death to change the matter? Upon the first point no difficulty has been experienced by the court. It is urged by the defendant's counsel that the consideration given by Ireland to Nathaniel Williams, Senior, for this land was inadequate, and therefore it ought not to be enforced. It is believed that no case can be found where inadequacy of consideration, abstracted from all other considerations, has been deemed sufficient either to set aside a contract or to refuse to enforce it. 2 Powell on Contracts, 255; 1 Wils. 230, 231; 2 Ves. 518. But if any circumstance accompany the transaction which will be sufficient to authorize the Court to infer the *Page 149 
want of free consent, the Court will lay hold of these circumstances and relieve the party. The case of Herne v. Meeres, 1 Vern. 465, turned upon the above principle. No such circumstance exists here; the price or value of the horse does not appear; one witness says he was a valuable horse at the period this contract was made. The selling price of this kind of property was extremely low. The North Carolinians held it not in high estimation, whilst its few occupants were menaced and harassed by savages; and it seems very probable that the price given was as high as usual. Upon the second point more difficulty has been experienced, not from the intricacy of any principle of law involved in the investigation, but from the ascertainment of facts upon which the mind could repose with confidence, whilst it made the application of these principles. The defendants, Harris and Blount, set up titles to this land through two different channels; first, directly by conveyance from Nathaniel Williams, heir-at-law of the, patentee, and secondly, indirectly through Charles Small wood; let us examine these titles separately, and see if either of them will protect the defendants. The evidence shows that Jacob Blount, who is said to be agent in this transaction, as early as the year 1798 or 1799, had an interview with Col. Murfree on the subject of this claim of Ireland; that he asked the witness if Nathaniel Williams, Senior, had sold this land to Ireland, and whether he had conveyed it. The witness informed him that he had sold it to Ireland. He then observed he would advise his brother to have nothing to do with it. The next thing we hear on this subject, Jacob Blount came to the house of another witness, and requested him to send for Nathaniel Williams, junior, which he did; and when Williams came, he solicited him to make a deed for this land to his brother John Gray Blount and Edward Harris. Williams refused, and stated that his uncle had sold it to Ireland in his lifetime, and had received *Page 150 
payment; Blount pressed him to make it, and said if they held the land, they would give him something, whereupon the deed was made; and that no consideration was given. Prom this evidence, which is uncontradicted and unimpeached, the mind is satisfied that Jacob Blount was the agent of the defendants, Blount and Harris, in this transaction; that he had complete notice of Ireland's outstanding equity, and that no consideration was given. It is objected that Jacob Blount is not such an agent as the law contemplates, when It is considered that notice to him shall bind his principal. This is not believed to be correct. This whole business seems to have been transacted entirely by Jacob Blount, for the defendants, Blount and Harris, and they receive the benefit of the contract. The law then is, that notice to the agent shall be considered sufficient notice to the principal. 2 Fonb. 153; 1 Ch. Ca. 38; 3 Atkins, 646; Gil. 7; 2 Vern. 574, 600. But there is one circumstance which goes very far towards proving actual notice. The subject of Ireland's claim to this land must have been mentioned between Jacob Blount and his principals previous to the conveyance in 1799, because he asks the witness about Ireland's purchase, and then says he would advise his brother to have nothing to do with it. The Court from this view are satisfied that the defendants had sufficient notice of the previous purchase of Ireland to convert them into trustees, and to divest them of this title in favor of the complainant. Now let us proceed to examine the defendant's title derived through Smallwood, and see if they can resist a decree for the complainant under it. Notice is either actual or implied. When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences. 2 Fonb. 151; Ves. Jun. 437; 1 Vern. 149, 319; 2 Vern. 381; 2 Ch. Ca. 246. The deed from Williams, *Page 151 
Junior, to Smallwood, the evidence clearly shows was without consideration; indeed he does not positively deny this allegation in his answer, but makes an evasive reference to the deed on the subject, and it is equally clear that he had notice of Ireland's previous purchase, Smallwood certainly then could not resist the complainant's claim. The next question that occurs is, how do Harris and Blount, who, it is said, purchased of him, stand? Are they in a better situation? The Court incline to think they stand on similar grounds. The deed of Williams to Smallwood possesses a kind of double character; it has the features of a power of attorney as well as a conveyance; it describes no particular land, and, besides, contains no warranty of title. Neither does the deed from Smallwood to them contain any warranty. These are perhaps sufficient circumstances to put them upon inquiry, and bring them within the principle of the last cases referred to We are not sure but upon examination it will be found that the vendee in all cases, when he receives but a special warranty or quitclaim conveyance, takes the estate subject to all the disadvantages that it was liable to in the hands of the vendor, and the law will presume notice of all incumbrances, either legal or equitable. The circumstance of a vendor refusing to make a full and ordinary assurance is sufficient to excite suspicion and put the party upon inquiry. Where the payee indorses a bill without recourse after it is due, or after payment has been refused, the holder or indorsee takes subject to all equity that could have been set up against it, in the hands of the payee. 4 Mass. 370; 2 Caines' Cases, 303; 2 Johnsons reports, 300; 4 Johnson, 28; 2 Dallas, 396; 1 Hay. 273. The reasons upon which the cases have been decided on the circumstances of the indorsements without recourse, the bill not being paid when due, are deemed sufficient to put the indorsee upon inquiry. The principles in relation to conveyances of real property *Page 152 
with special warranty, perhaps will be found equally applicable. However, it is not necessary to give a positive opinion on this subject. Independent of this view of the case, there is another objection to the title of Blount and Harris, derived through Smallwood, that must render it inoperative. This bill was filed in August, 1804, and this conveyance was made the 5th of September, 1805, and after the filing the answer of Blount and Harris. Purchases made pendente lite are presumed to be made with notice. 2 P.W. 482; 3 Atk. 392; 2 Fonb. 152; Amb. 676. It is said in some of the answers, that this purchase was made as early as the year 1796, yet no evidence is before the Court but the conveyance itself; and certainly, if the defendants wished to avoid the maximqui prior est in tempore potior in jure, they should have shown to the satisfaction of the Court the equity upon which this late conveyance is founded. Upon the whole matter, this court is satisfied that the complainant is entitled to a decree for the land described in his deed from Ireland for 1,024 acres.